IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-519-FL

| | |
|---|---|
| KIMBERLY ANN SCIANDRA, as Administrator of the ESTATE OF MARSHA KATHLEEN SCIANDRA,<br><br>Plaintiff,<br><br>v.<br><br>INSULET CORPORATION; DEXCOM, INC.; US MED, LLC; and CARY ENDOCRINE & DIABETES CENTER, P.A.,<br><br>Defendants. | ORDER |

This matter is before the court on plaintiff's motion to remand (DE 33), which motion has been briefed fully, and is ripe for ruling. Also pending is a motion for leave to file sur-reply filed by defendants Dexcom, Inc. ("Dexcom"), Insulet Corporation ("Insulet"), and US Med, LLC ("US Med"), in which said defendants seek to address issues allegedly raised for the first time in plaintiff's reply in support of her motion to remand. (DE 44). For the following reasons, the court grants the motion for leave to file sur-reply, and upon consideration of the briefing thus expanded the court grants the motion for remand.

**STATEMENT OF THE CASE**

Plaintiff commenced this products liability and negligence action June 27, 2025, in Wake County Superior Court, asserting claims arising out of the death of Marsha Kathleen Sciandra ("decedent") following her use of an insulin pump and monitoring system allegedly designed,

manufactured, assembled, inspected, maintained, sold, marketed, distributed, and/or supplied by defendants. Plaintiff asserts seventeen claims in the following categories:

1. "Negligent, grossly negligent, reckless, willful, and wanton conduct" of all defendants,[1]

2. "Breach of express and implied warranties" by all defendants,

3. "Chapter 75 violations" by defendants Insulet, Dexcom, and US Med,

4. "Negligent and wanton misrepresentation" by defendants Insulet, Dexcom, and US Med, and

5. "Punitive damages" against defendants Insulet, Dexcom, and US Med.

(Compl. (DE 1-9) 8, 12, 14, 17-19, 23, 25, 28, 30, 34, 36, 39, 41, 45).[2] Plaintiff seeks compensatory and punitive damages, costs and interest.

Defendant Insulet filed notice of removal in this court August 22, 2025, asserting jurisdiction under 28 U.S.C. § 1332(a), on the basis of diversity jurisdiction. While acknowledging that defendant Cary Endocrine & Diabetes Center, P.A. ("Cary Endocrine"), is a North Carolina business entity, defendant Insulet asserts that "Cary Endocrine is fraudulently joined" or claims against it should be severed to preserve diversity jurisdiction. (Notice of Removal (DE 1) at 2).

Plaintiff thereafter filed the instant motion to remand, on the basis that the court lacks diversity jurisdiction, defendant Cary Endocrine was not fraudulently joined, and claims against it are not severable. Plaintiff relies upon her own declaration. Defendants[3] filed a response in

---

[1] The caption of the claim against defendant US Med is limited to "Negligent and wanton conduct," but the substance of the claim encompasses also gross negligence, recklessness, and willfulness. (Compl. (DE 1-9) at 30-32).

[2] In citations to the complaint and other filings in the record, page numbers in citations specify the page numbers supplied by the court's case management / electronic case filing ("CM/ECF") system and not the page numbers, if any, showing on the face of the documents.

[3] Hereinafter, all references to "defendants" in the instant order are to defendants Insulet, Dexcom, and US Med, to the exclusion of defendant Cary Endocrine, unless otherwise specified.

opposition, relying upon articles of incorporation of Cary Endocrine and an affidavit of Sung-Eun Yoo, M.D. ("Yoo"), owner of Cary Endocrine. Plaintiff replied, relying upon a supplemental affidavit. Defendants then filed the instant motion for leave to file sur-reply, relying upon a proposed sur-reply.

## STATEMENT OF THE FACTS

The facts alleged in the complaint, as pertinent to the instant motion, may be summarized as follows.

Decedent "was a Type 1, insulin dependent diabetic from the age of three years old until her death at the age of seventy-five on August 27, 2023." (Compl. ¶ 23). "The Omnipod 5 is a wearable, tubeless automated insulin delivery system designed to manage diabetes by delivering insulin subcutaneously." (Id. ¶ 24). "The Omnipod 5 is used in conjunction with a continuous glucose monitoring system and is specifically designed to be compatible with the Dexcom G6 CGMS." (Id.). "Used together, these devices are designed to automatically adjust insulin delivery based on a patient's blood glucose level to more effectively manage diabetes." (Id.). "Elevated or depressed blood glucose levels during sleep can be particularly dangerous because diabetics are unaware of fluctuations. Dexcom designed and markets the Dexcom G6 CGMS as being able to alert and awaken users who become hypo or hyperglycemic." (Id. ¶ 25).

Decedent "was sold the Omnipod 5 insulin pump on August 4, 2022 by [defendant] Cary Endocrine." (Id. ¶ 26). She "utilized the Dexcom G6 CGMS and the Omnipod 5 as part of her diabetes management plan." (Id. ¶ 27). "Upon information and belief, [decedent's] Omnipod 5 and Dexcom G6 units were sold by [defendant] US Med." (Id. ¶ 28).

"After beginning use of the Omnipod, [decedent] experienced difficulty in maintaining her blood glucose at safe levels, reporting sustained elevated blood glucose levels after meals and

3

overnight despite receiving insulin via the pump." (Id. ¶ 29). "On August 8, 2023, [decedent's] blood glucose level was persistently elevated throughout the day." (Id. ¶ 30). "That evening, after receiving [an elevated] blood glucose reading . . . on her Dexcom, she directed the Omnipod to administer several doses of insulin to bring her level down." (Id.). "The Omnipod registered that the doses were given." (Id.).

"Believing the insulin to be delivered, [decedent] went to bed." (Id. ¶ 31). The next morning, decedent's husband found decedent "collapsed on the bedroom floor," and he called emergency medical services, which determined decedent had highly elevated blood glucose level. (Id. ¶ 32). Decedent's blood glucose level further increased upon hospital admission. (Id.). Decedent was "diagnosed and treated for severe diabetic ketoacidosis (OKA), acute kidney injury, and hypotension." (Id. ¶ 33). Despite aggressive treatment, her "condition deteriorated, leading to her death on August 27, 2023." (Id.).

Decedent's "attending physician . . . discovered that the Omnipod unit used by [decedent] at the time of injury had a bent needle." (Id. ¶ 34). "As a result, the Omnipod had not subcutaneously delivered the insulin as designed." (Id.). "Despite having a warning system to alert users to other sources of needle occlusion, the alert does not function when the needle is bent." (Id.).

According to the complaint defendant Cary Endocrine "derives profit from inspecting, testing, warning, advertising, promoting, and supplying [the] Omnipod [and] Dexcom" products, "including, but not limited to, the Omnipod 5 and Dexcom G6 CGMS being used" by decedent. (Id. ¶ 175). It "produced, advertised, sold, and supplied" the subject Omnipod 5 and Dexcom G6 CGMS, which was defective in manufacture" and "in design." (Id. ¶ 176). It "failed to properly test," "inspect," "provide appropriate manuals," and "provide adequate and appropriate warnings,"

4

and it "continued to make statements touting the reliability and safety of" the Omnipod and Dexcom products. (Id. ¶ 178).

Plaintiff also alleges that defendant Cary Endocrine "by and through its officers, managers, agents, suppliers, contractors, subcontractors, representatives, and others for whom they are legally responsible, in order to induce the purchase of Omnipod 5 and Dexcom G6 CMGS devices, which they marketed and/or sold under its trade name as a manufacturer, including the products which are the subject of this litigation, advertised to the public the availability and safety of the Omnipod 5 and Dexcom G6 CMGS devices." (Id. ¶ 183).

"Through the use of such advertising, [d]efendant Cary Endocrine . . . for the benefit of ultimate consumers and users, including [decedent], directed the attention of the public and particularly ultimate consumers and users, specifically including [decedent] . . . by means of express representations and warranties, to the Omnipod 6 and Dexcom G6 CMGS devices by representing that the public and ultimate consumers . . . could use the Omnipod 5 and Dexcom G6 CMGS devices safely and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by [d]efendant Cary Endocrine." (Id. ¶ 184).

"In using the subject Omnipod 5 and Dexcom G6 CMGS devices, [decedent] relied upon the skill and judgment of [d]efendant Cary Endocrine . . . and upon the express warranty of [d]efendant Cary Endocrine." (Id. ¶ 185). "The subject Omnipod 5 and Dexcom G6 CMGS devices were defective in design and/or manufacture, and such defect breached the express . . . warranties given by [d]efendant Cary Endocrine." (Id. ¶ 186).

**COURT'S DISCUSSION**

A.  Motion for Leave to File Sur-Reply

5

Defendants seek leave to file a sur-reply to address to "address certain legal and factual issues raised for the first time" in plaintiff's reply. (Defs' Mot. for Leave (DE 44) at 1). In particular, defendants argue that plaintiff "raises a new argument regarding the 'no possibility' standard for fraudulent joinder and also attaches a new affidavit from [p]laintiff that contains new factual allegations." (Id.).

Local Civil Rule 7.1 authorizes litigants to file "motions," "responses to motions," and "replies." It provides that "[r]eplies to responses are discouraged," and "a party desiring to reply to matters initially raised in a response to a motion shall file the reply within 14 days after service of the response." Local Civil Rule 7.1(g). Local Civil Rule 7.1 does not address expressly the filing of sur-replies. However, it suggests by its treatment of replies that the court's leave must be sought to allow such filings, and that such leave may be granted entirely within the court's discretion in the event matters are raised initially in a reply.

In this instance, the court in its discretion will allow the filing of defendants' proposed sur-reply. Although plaintiff argues that she did not raise new issues for the first time in reply, as a practical matter the court can address the parties' characterizations of their arguments as part of the court's analysis herein. Therefore, the court grants defendants' motion for leave to file sur-reply, and the court deems filed defendants' proposed sur-reply lodged at DE 44-1.

B.  Motion to Remand

   1.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking

6

removal." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).[4] "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Id. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

2. Analysis

Defendants argue that the court has diversity jurisdiction over the instant action because defendant Cary Endocrine was fraudulently joined to defeat diversity jurisdiction, and because the court can retain jurisdiction by severing claims against defendant Cary Endocrine under Rule 21. The court addresses these arguments in turn as follows.

a. Fraudulent Joinder

"[T]he fraudulent joinder doctrine provides that diversity jurisdiction is not automatically defeated by naming non-diverse defendants." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015). The doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015).

Invocation of the fraudulent joinder doctrine is appropriate only where "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993) (emphasis in original). "[U]ltimate success is not required to defeat removal. Rather, there need be only a

---

[4] Internal citations and quotation marks are omitted from all citations unless otherwise specified.

slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Id. at 424. "In order to determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990).

Because the court must determine whether "plaintiff would be able to establish a cause of action . . . in state court,"[5] the court also takes into account North Carolina pleading standards. Marshall, 6 F.3d at 232. "Under the [North Carolina] Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." Howell v. Cooper, 388 N.C. 71, 77 (2025). This reflects the "the liberal nature of the concept of notice pleading," under which "detailed fact-pleading is no longer required." Id. "Ultimately, a complaint is legally sufficient so long as it states enough to give the substantive elements of at least some legally recognized claim." Id. at 78. "Dismissal under [North Carolina] Rule 12(b)(6) is warranted only when (1) it appears <u>certain</u> that plaintiffs could prove no set of facts which would entitle them to relief under some legal theory; (2) <u>no</u> law exists to support the claim made; or (3) the complaint on its face discloses facts that <u>necessarily</u> defeat the claim." Id. (emphasis in original).

---

[5] Where defendant does not argue "there has been outright fraud in the plaintiff's pleading of jurisdictional facts," the court does not address further this alternative basis for showing fraudulent joinder. Marshall, 6 F.3d at 232-33.

Plaintiff sufficiently states a claim under the North Carolina pleading standard for breach of express warranty against defendant Cary Endocrine.[6] An express warranty may be created by:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise [or]
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.C. Gen. Stat. § 25-2-313(1). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that [it] have a specific intention to make a warranty." Id. § 25-2-313(2). "A breach occurs when the goods fail in any respect to conform to the express warranty given," that is, "the affirmation of fact or promise made by the seller to the buyer which relate to the goods and becomes part of the basis of the bargain between them." Alberti v. Manufactured Homes, Inc., 329 N.C. 727, 737 (1991). An "element of reliance can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use." Bernick v. Jurden, 306 N.C. 435, 448 (1982). "[T]he existence and scope of any warranty is a question for the finder of fact." Id. at 450.

Here, plaintiff pleads an express warranty claim on the basis of the following allegations: 1) decedent "was sold the Omnipod 5 insulin pump on August 4, 2022 by [defendant] Cary Endocrine"; 2) defendant Cary Endocrine, "in order to induce the purchase of Omnipod 5 and Dexcom G6 CMGS devices, which they marketed and/or sold . . . advertised to the public the availability and safety of the Omnipod 5 and Dexcom G6 CMGS devices"; 3) "[t]hrough the use of such advertising, [d]efendant Cary Endocrine . . . directed the attention of the public and

---

[6] Having determined that plaintiff has pleaded claim for express warranty, the court does not reach the parties' arguments regarding plaintiff's other causes of action against defendant Cary Endocrine.

9

particularly ultimate consumers and users, specifically including [decedent]. . . by means of express representations and warranties, to the Omnipod 6 and Dexcom G6 CMGS devices by representing that [decedent] . . . could use the Omnipod 5 and Dexcom G6 CMGS devices safely and without fear of sudden malfunction in ordinary uses, and in the manner directed and for the purposes intended by [d]efendant Cary Endocrine"; 4) decedent "relied upon the skill and judgment of [d]efendant Cary Endocrine . . . and upon the express warranty of [d]efendant Cary Endocrine"; and 5) "The subject Omnipod 5 and Dexcom G6 CMGS devices were defective in design and/or manufacture, and such defect breached the express . . . warranties given by [d]efendant Cary Endocrine." (Compl. ¶¶ 26, 183-186).

The foregoing allegations cover the essential elements of an express warranty claim, comprising an affirmation of fact or description of goods sold, made part of the basis of the bargain upon which decedent relied. See N.C. Gen. Stat. § 25-2-313(1); Alberti, 329 N.C. at 737; Bernick, 306 N.C. at 448. Accordingly, defendants fail to show "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court," as required to establish fraudulent joinder. Marshall, 6 F.3d at 232 (emphasis in original).

Defendants' arguments are insufficient to meet their "heavy burden" to establish fraudulent joinder. Hartley, 187 F.3d at 426. For example, defendants argue that "N.C. Gen. Stat. § 90-21.13(d) does not allow express warranty claims against healthcare providers in the absence of a writing signed by a physician and no such writing is alleged or exists." (Defs' Surreply (DE 44-1) at 3). Defendants omit, however, that the defense in § 90-21.13(d) applies only to an action "maintained against any health care provider upon any guarantee, warranty, or assurance as to the result of any medical, surgical or diagnostic procedure or treatment." N.C. Gen. Stat. § 90-21.13(d) (emphasis added). Plaintiff does not assert an express warranty claim against defendant Cary

10

Endocrine on the basis of an assurance as to the result of a "diagnostic procedure or treatment," Id., but rather on the basis of a product or products that were "marketed and/or sold" by defendant Cary Endocrine. (Compl. ¶ 183). This argument, therefore, is inapposite.

Defendants argue that plaintiff fails to adequately allege an express warranty claim because the complaint does not "identify the 'specific words, promises, affirmations, or statements of fact by [Cary Endocrine] that could have created an express warranty,'" (Defs' Opp. (DE 40) at 15), relying for this proposition upon Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 72 (E.D.N.C. 2022). This argument, and the Sasso case upon which it relies, however, are inapposite because they are based on a federal pleading standard, not the applicable state pleading standard under which "detailed fact-pleading is no longer required." Howell, 388 N.C. at 77. In addition, plaintiff does allege a specific representation by Cary Endocrine: "Through the use of . . . advertising . . . representing that the public and ultimate consumers and users, including [decedent], could use the Omnipod 5 and Dexcom G6 CMGS devices safely and without fear of sudden malfunction in ordinary uses." (Compl. ¶ 184). Accordingly, defendants' argument challenging the sufficiency of the pleading in the complaint is without merit.

Defendants also argue that Yoo's affidavit defeats plaintiff's claim because it shows that "Cary Endocrine has never designed, manufactured, inspected, marketed, sold or supplied the Omnipod 5 or Dexcom G6," and it was decedent's "health care provider, nothing more." (Defs' Opp. (DE 40) at 9). As an initial matter, where plaintiff's complaint states an express warranty claim, defendants' fraudulent joinder argument is defeated because of the "possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Marshall, 6 F.3d at 232. Having "identifie[d] this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Hartley, 187 F.3d at 426.

11

In any event, given plaintiff's affidavits to the contrary, the Yoo affidavit serves only to create a factual dispute as to a defense to one element of plaintiff's express warranty claim. It does not "show that the plaintiff cannot establish a claim even after <u>resolving all issues of law and fact in the plaintiff's favor</u>." <u>Hartley</u>, 187 F.3d at 424 (emphasis added). Indeed, it is not the role of this court to determine the "ultimate success" of plaintiff's claim upon the instant limited record. <u>Id.</u> at 426.

Defendants also challenge the effectiveness of plaintiff's affidavits, on the basis that her first affidavit includes allegations upon "information and belief," and her second affidavit "is not based on personal knowledge, does not include information from which [p]laintiff's personal knowledge of the factual allegations could be inferred, and cannot refute Cary Endoctrine's affidavit." (Defendants' Surreply at 3; Opp. at 10). Plaintiff's second affidavit, however, does include facts upon which a claim for express warranty could be based, where plaintiff alleges defendant Cary Endocrine "selected the Dexcom device" and "Insulet device" for decedent," that decedent relied upon defendant Cary Endocrine "to select and provide medical devices that were free of design or manufacturing defects," and that she relied upon defendant Cary Endocrine "to maintain and service these medical devices" and "replace the device" if needed. (Pl's Supp. Aff. (DE 43-1) ¶¶ 3-5, 17-20). Thus defendants' challenges to plaintiff's affidavits do not overcome "a slight possibility of a right to relief," or a "glimmer of hope for the plaintiff." <u>Hartley</u>, 187 F.3d at 426.

Defendants cite to <u>Boss v. Nissan N. Am., Inc.</u>, 228 F. App'x 331, 336 (4th Cir. 2007), for the proposition that "[w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint." (Defs' Opp. (DE 40) at 10-11). In <u>Boss</u>, however, the plaintiff "made no

12

Case 5:25-cv-00519-FL   Document 46   Filed 12/02/25   Page 12 of 15

attempt, . . . to rebut [the defendant's] affidavit in the three months that his motion to remand was pending before the district court." 228 F. App'x at 336. Here, by contrast, plaintiff has made a specific and detailed attempt to rebut defendants' affidavit. (See Pl's Second Aff. (DE 43-1) at 1-4). Accordingly, Boss is inapposite.

In sum, defendants fail to establish fraudulent joinder. Thus, where the presence of defendant Cary Endocrine in this action defeats diversity jurisdiction, remand is required. Mulcahey, 29 F.3d at 151.

    b.  Severing Joined Claims

Defendants also argue the court can retain jurisdiction by severing claims against defendant Cary Endocrine under Federal Rule of Civil Procedure 21.

Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 20 further provides that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Here, where plaintiff states a claim under North Carolina pleading rules against defendant Cary Endocrine, dropping Cary Endocrine as a party ostensibly to create diversity jurisdiction is not warranted. Plaintiff properly brought claims against all defendants, including Cary Endocrine, together because all of plaintiff's claims arise out of decedent's death allegedly due to use of the Omnipod 5 and Dexcom G6 CGMS products, which all defendants are alleged to have either "designed, manufactured, assembled, equipped," or "inspected, tested, warranted, promoted, advertised, warned, distributed, sold, and/or supplie[d]." (Compl. ¶¶ 37, 83, 131, 176).

13

Defendants argue that Cary Endocrine "is not a necessary or indispensable party because . . . [p]laintiff cannot assert product liability claims or breach of warranty claims against Cary Endocrine." (Defs' Opp. (DE 40) at 18). However, where the court has determined in section B.2.a. of this analysis that plaintiff has stated a claim for breach of express warranty, this argument is without merit.

Defendants also argue that plaintiff's claims against defendant Cary Endocrine "are distinct from [p]laintiff's product liability claims against all other [d]efendants, and do not arise from the same transaction or occurrence." (Id. at 19). The court disagrees with the characterization of plaintiff's claims. In fact, plaintiff pleads express warranty claims against all defendants, and each of those claims arises out of use of the same products, which products are alleged to have caused the death of decedent during a single incident in which the "Omnipod unit . . . had a bent needle." (Compl. ¶ 34). Moreover, plaintiff's claims are well within the contours of "alternative" pleading as permitted under North Carolina law. See N.C. R. Civ. P. 8(e)(2). Therefore, maintaining plaintiff's claims against all defendants in one suit is warranted by the nature of the alleged facts claims in this case.

In sum, the court declines to sever defendant Cary Endocrine based upon the totality of the circumstances in this case. Where defendant Cary Endocrine is not diverse from plaintiff, and no other basis for disregarding citizenship of Cary Endocrine has been shown, remand is required.

C. Costs and Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively

14

reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Ultimately, diversity jurisdiction is foreclosed in the instant case based on the allegations in the complaint and the materials presented upon plaintiff's motion to remand. Nonetheless, defendants presented objectively reasonable arguments in favor of maintaining jurisdiction. Therefore, each side will bear their own costs and fees.

## CONCLUSION

Based on the foregoing, defendants' motion for leave to file sur-reply (DE 44) is GRANTED and their proposed sur-reply at DE 44-1 is deemed filed. Where plaintiff's motion to remand (DE 33) is GRANTED, the court does not address motion to dismiss for lack of jurisdiction filed by defendant Cary Endocrine & Diabetes Center, P.A. (DE 26), motion to dismiss for failure to state a claim filed by defendant US Med (DE 29), or motion to compel arbitration or alternatively to dismiss filed by defendant Dexcom (DE 32). The court declines to award costs and fees. Pursuant to 28 U.S.C. § 1447(c), this case is REMANDED to the Superior Court of Wake County for further proceedings. The clerk is DIRECTED to transmit to the Superior Court of Wake County a certified copy of this order of remand, and to file on the docket herein a notice of such transmittal.

SO ORDERED, this the 2nd day of December, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge